UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STACY M. DELOSSANTOS,

                        Plaintiff,

v.                                                          7:16-CV-0713
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
P.O. Box 249
Fayetteville, NY 13066

U.S. SOCIAL SECURITY ADMIN.                     SUSAN J. REISS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Stacy M. Delossantos

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 9, 13.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and

Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision

denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1978, making her 33 years old at the date she filed her application and 35 years old at the date of the ALJ's decision. Plaintiff reported a 9th grade education with involvement in special education. Plaintiff has no past relevant work. Generally, Plaintiff alleges disability due to severe depression, anxiety, mental damage, emotional damage, and physical damage.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on October 11, 2012. Plaintiff's application was initially denied on May 1, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Marie Greener on August 21, 2014. On October 31, 2014, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 14-22.)[1] On June 10, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 16-22.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application filing date. (T. 16.) Second, the ALJ found that Plaintiff's depressive disorder and anxiety disorder are severe impairments, while the alleged physical

---

[1]     The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

impairments are non-severe.  (T 16-17.)  Third, the ALJ found that Plaintiff's severe

impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404,

Subpart P, App. 1 (the "Listings").  (T. 17-18.)  Specifically, the ALJ considered Listings 12.04

(affective disorders) and 12.06 (anxiety-related disorders).  (*Id*.)  Fourth, the ALJ found that

Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all

exertional levels that consists of routine, daily tasks that do not significantly change in pace or

location on a daily basis.  (T. 18.)  Fifth, the ALJ found that Plaintiff does not have any past

relevant work.  (T. 21.)  Sixth, and last, the ALJ found that significant numbers of jobs exist in

the national economy that Plaintiff remains able to perform because the limitations in the RFC

have little or no effect on the ability to perform the occupational base of unskilled work.  (T. 22.)

The ALJ therefore concluded that Plaintiff is not disabled.

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes four arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ erred when assessing credibility because she failed

to properly consider the required statutory factors and mischaracterized evidence in the record.

(Dkt. No. 9, at 10-12 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that the ALJ

mischaracterized or failed to properly assess evidence related to her medications, work history,

and statements regarding "inconsistent responding" on mental testing.  (Dkt. No. 9, at 11-12 [Pl.

Mem. of Law].)

Second, Plaintiff argues that the ALJ erred in failing to afford greater weight to the

opinion of treating physician Michael Camillo, M.D., and in failing to "acknowledge the months

of treatment provided by Therapist Daily under Dr. Camillo's supervision and further failed to

explain its implicit rejection."  (Dkt. No. 9, at 13-14 [Pl. Mem. of Law].)  Plaintiff also argues

3

that the ALJ improperly selected only those portions of Physician Assistant ("PA") Melinda Rosner's opinion that supported the ALJ's conclusions, asserting it was part of the ALJ's "insufficient review of the medical evidence of record." (Dkt. No. 9, at 14 [Pl. Mem. of Law].)

Third, Plaintiff argues that the RFC finding is not supported by substantial evidence based on the mental limitations opined by Plaintiff's treating physician. (Dkt. No. 9, at 15-16 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ erred in failing to obtain testimony from a vocational expert to support the Step Five finding because the record established that Plaintiff experienced non-exertional limitations. (Dkt. No. 9, at 16-17 [Pl. Mem. of Law].)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, in response to Plaintiff's second and third arguments, Defendant argues that the RFC finding is supported by substantial evidence because the ALJ properly relied on the opinion from consultative examiner Dennis Noia, Ph.D., and on the objective treatment evidence showing improvement of symptoms with treatment. (Dkt. No. 13, at 12-14 [Def. Mem. of Law].) Defendant also argues that the ALJ properly afforded less than controlling weight to Dr. Camillo's opinion due to a lack of support from the treatment record and Dr. Camillo's own statement that the opinion was based on Plaintiff's subjective reports and speculation. (Dkt. No. 13, at 15-17 [Def. Mem. of Law].) Defendant additionally argues that the ALJ appropriately weighed PA Rosner's opinion according to the weight of the evidence and properly considered the totality of the evidence. (Dkt. No. 13, at 18-19 [Def. Mem. of Law].)

Second, in response to Plaintiff's first argument, Defendant argues that the ALJ properly assessed Plaintiff's subjective allegations as required under the regulations. (Dkt. No. 13, at 19-20 [Def. Mem. of Law].) Defendant argues that the ALJ's credibility finding is supported by the

objective medical evidence, Plaintiff's non-existent work history and reasons she provided for not working, her reported daily activities, and inconsistent responses during cognitive and mental health testing. (Dkt. No. 13, at 20-23 [Def. Mem. of Law].)

Third, in response to Plaintiff's fourth argument, Defendant argues that the ALJ was not required to solicit vocational expert testimony because, although there was evidence of non-exertional impairments, such impairments did not significantly limit Plaintiff's ability to perform the basic mental demands of unskilled work. (Dkt. No. 13, at 23-24 [Def. Mem. of Law].)

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without

6

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

### A.  Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 21-23 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ found that Plaintiff's reports of the intensity, persistence, and limiting effects of her symptoms were not credible because "they are unsupported by medical and other evidence, competent medical opinion, and testimony." (T. 19.) In the decision, the ALJ noted Plaintiff's reported daily activities, which included helping with household chores with reminders, managing her finances with some assistance, regularly performing self-care and grooming tasks, and engaging in hobbies such as watching television and doing puzzles. (T. 17-18.) The ALJ noted that Plaintiff's treatment was "generally successful" in reducing her symptoms without side effects. (T. 19.) The ALJ also noted that Plaintiff has never worked and that she told one medical source that she did not want to work because she did not want to leave her children. (T. 20.) Additionally, the ALJ cited to inconsistent reports regarding her ability to read and suggestions that Plaintiff might be exaggerating her symptoms, such as her report of various physical issues despite the lack of any medical evidence substantiating those symptoms and a notation of inconsistent responses during the psychological evaluation. (*Id.*)

Plaintiff argues that the ALJ failed to properly consider the factors required by the regulations and mischaracterized the evidence in finding Plaintiff not credible. (Dkt. No. 9, at 10-12 [Pl. Mem. of Law].) However, Plaintiff's arguments are not persuasive. The ALJ explicitly cited to the correct standard for assessing credibility and provided multiple clear reasons for her conclusion. (T. 19-20.) The ALJ discussed the factors that were most relevant to the determination in this case and there is nothing to suggest that the ALJ failed to apply the proper standard. This Court does not require the ALJ explicitly discuss every factor or engage in a specific formulaic recitation so long as the ALJ's rationale and compliance with the regulations can be gleaned from the written decision. *See Showers v. Colvin*, No. 3:13-CV-1147, 2015 WL 1383819, at *6 (N.D.N.Y. Mar. 25, 2015) ("Courts conducting judicial review in social security cases, however, do not require perfect opinions or rigid, mechanical, formulaic applications of administratively-prescribed evaluative protocols.") (citing *Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013)).

Likewise, Plaintiff's assertion that the ALJ mischaracterized the evidence is not supported. Plaintiff first argues that the ALJ erred in finding that her medications and treatment had been generally successful because she needed ongoing treatment and her medications had to be changed on multiple occasions by Dr. Camillo. (Dkt. No. 9, at 11 [Pl. Mem. of Law].) However, Plaintiff's argument ignores the fact that the evidence does show notations of improvement with treatment; the fact that her medications and treatment did not completely alleviate her symptoms does not negate the fact that they did lessen her symptoms and increase her ability to function to some extent. (*See e.g.*, T. 221-22, 236, 272, 284, 286, 291, 319, 325, 340.) Notably, on March 31, 2014, Joanna Dailey, L.C.S.W., noted that Plaintiff reported her medications were effective; Therapist Dailey also indicated they discussed that it was normal for

Plaintiff to be experiencing some continuing symptoms of depression despite medication due to the amount of stress in her life recently. (T. 340.) Additionally, on January 2, 2014, and March 17, 2014, Plaintiff reported that, although she was experiencing increased anxiety due to her fiancé's criminal trial and the prospect of becoming a single parent, her anxiety did not interfere with her ability to perform activities of daily living. (T. 315, 336.) Consequently, the treatment evidence supports the ALJ's finding that Plaintiff's medications and treatment improved her symptoms to an appreciable degree.

Plaintiff next argues that the ALJ "misconstrue[d] Plaintiff's work ethic" in citing her non-existent work history because a school report from 1992 had noted she was a "hard worker" and she was continuing in her efforts to learn to read. (Dkt. No. 9, at 11 [Pl. Mem. of Law].) However, at the hearing, Plaintiff testified that she has always relied on Social Services for her income and has never even attempted to work. (T. 40.) Given Plaintiff's complete lack of a work history and her own testimony that she has not attempted to work, combined with her statement to one source that she did not want to work because she did not want to leave her children, there was nothing unreasonable about the ALJ's conclusion that this work history suggested that Plaintiff's lack of employment was related to factors other than her medical issues. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (noting that poor work history can be probative to a claimant's credibility when considered with other relevant evidence, but cautioning that work history is only one factor to consider when assessing credibility).

Plaintiff also argues that the ALJ misrepresented portions of the psychological and cognitive evaluation performed by Thomas Knudsen, Psy. D., on July 18, 2013. (Dkt. No. 9, at 11-12 [Pl. Mem. of Law].) Plaintiff argues that the ALJ should not have found this exam to constitute evidence of exaggeration because Dr. Knudsen ultimately concluded that the results of

the exam were an accurate picture of her emotional functioning despite the inconsistent responding. (*Id.*) However, the ALJ's failure to note that Dr. Knudsen found the results to be an accurate assessment of Plaintiff's emotional functioning despite the inconsistencies is not a material misinterpretation of the evidence because there is no indication that the ALJ rejected any portion of Dr. Knudsen's findings. Dr. Knudsen concluded that, despite her emotional and cognitive symptoms, Plaintiff had the capacity to understand psychotherapy and learn appropriate skills to deal with her symptoms, an assessment that is not inconsistent with the ALJ's ultimate finding of non-disability. (T. 254.) In any event, even if the ALJ did err in considering this as evidence of exaggeration, the ALJ provided multiple other reasons that were supported by the evidence for ultimately concluding that Plaintiff was not entirely credible. Consequently, any misinterpretation of Dr. Knudsen's statement would not by itself merit invalidating the credibility determination as a whole. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence); *see also Taylor v. Colvin*, No. 3:14-CV-0928, 2016 WL 1049000, at *8-9 (N.D.N.Y. Mar. 11, 2016) (noting that the ALJ's failure to inquire into the reasons for gaps in mental health treatment prior to using those gaps against the plaintiff's credibility was harmless where the ALJ provided other reasons supported by substantial evidence to support the overall credibility determination).

Plaintiff does not challenge the ALJ's citation to inconsistencies in Plaintiff's reports about her ability to read as a factor adverse to her credibility. Notably, the ALJ cited to an inconsistency related to Plaintiff's testimony that she was teaching herself to read and could only read books intended for three year old children or, later in the hearing, at a second grade level.

11

(T. 43, 46-47.)  However, school records from when Plaintiff was in the seventh grade indicate she was reading at a fourth grade level.  (T. 196, 198.)  Plaintiff's school records therefore show that she does have difficulties reading, but do not support her allegations that she needed to teach herself to read or that her reading skills were at such an elementary level as she reported at the time of the hearing.  Such inconsistencies are properly within the range of factors that the ALJ must assess when making the credibility finding. *See Jackson v. Comm'r of Soc. Sec.*, No. 3:14-CV-0350, 2015 WL 2356738, at *12 (N.D.N.Y. May 15, 2015) (finding the adverse credibility finding supported in part by citations to inconsistencies between plaintiff's various statements); *Lawton v. Comm'r of Soc. Sec.*, No. 7:10-CV-0256, 2010 WL 4810676, at *9 (N.D.N.Y. Nov. 2, 2010) (upholding the credibility assessment based on the ALJ's reliance on contrary medical evidence, plaintiff's reported daily activities, and inconsistencies in plaintiff's various statements).

The ALJ provided multiple clear reasons that are consistent with the evidence for concluding Plaintiff's allegations were not credible.  The credibility determination is therefore supported by substantial evidence, and remand is not warranted on this basis.

**B.     Whether the Weight Afforded to the Opinion Evidence is Consistent with Applicable Legal Standards and Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 12-21 [Def. Mem. of Law].)  To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 416.927(c)(1)-(6).  Additionally, when weighing opinions from

sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

Plaintiff argues that the ALJ should have afforded controlling weight to the opinions from PA Rosner and treating physician Dr. Camillo, asserting that the ALJ's selective review of the evidence in the record caused him to reach an improper conclusion, particularly related to PA Rosner's opinion. (Dkt. No. 9, at 13-14 [Pl. Mem. of Law].) Plaintiff's arguments fail for a number of reasons.

First, PA Rosner is not a medically acceptable source as that classification is defined in the regulations, and therefore her opinion would in no circumstance be legally entitled to controlling weight. *See* 20 C.F.R. § 416.927; SSR 06-03p, 2006 WL 2329939.

Second, Plaintiff does not indicate what evidence she alleges the ALJ supposedly ignored or overlooked when weighing PA Rosner's opinion. (Dkt. No. 9, at 14 [Pl. Mem. of Law].) In explaining the weight afforded to PA Rosner's opinion, the ALJ does not even rely on whether the statement that Plaintiff was "unable to work until further notice" was inconsistent with the evidence, but rather noted that this statement was inconsistent with the rest of PA Rosner's opinion that there was no evidence that Plaintiff had mental restrictions. (T. 20-21, 218 245.) The ALJ is certainly correct that there is a material conflict between an opinion that a claimant has no work-related limitations and a statement by the same source that the claimant is unable to

---

[2]     Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

work due to her impairments; there is no logical way the ALJ could have relied on one of these statements without rejecting the other.  There was nothing improper about the ALJ's choice to afford greater weight to PA Rosner's more specific functional opinion than to her conflicting, conclusory, and unexplained statement that Plaintiff was unable to work.  Notably, whether a claimant is disabled is an issue reserved to the Commissioner, and an opinion indicating that a claimant is "disabled" or "unable to work" is not entitled to special deference.  *See Mortise v. Astrue,* 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) (noting that it was proper for the ALJ to give little weight to an opinion that the plaintiff was severely disabled and not competitively employable because that concerned an issue reserved to the Commissioner) (citing 20 C.F.R. § 416.927(d)(1)).  Additionally, to the extent that Plaintiff's argument seems to assert that the ALJ erred in ignoring evidence showing mental limitations when affording significant weight to PA Rosner's opinion that there was no evidence of mental limitations, the ALJ did not conclude that Plaintiff had no mental limitations, but rather, after assessing the evidence as a whole, found her limited to routine daily tasks that do not significantly change in pace or location on a daily basis.  *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) ("Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.") (citing 20 C.F.R. § 416.927(c)(2)).  Notably, the ALJ afforded great weight to the opinion from consultative examiner Dr. Noia, who opined that Plaintiff had only mild-to-moderate limitations in learning new tasks and moderate limitations in dealing with stress.  (T. 207-08.)  Because Plaintiff does not point to what material

evidence she believes the ALJ ignored,[3] and because the ALJ's conclusions are supported by

substantial evidence, there is no error meriting remand in the ALJ's assessment of PA Rosner's

opinion.

Third, the ALJ correctly declined to rely on Dr. Camillo's opinion because the evidence

clearly establishes that, as the ALJ found, Dr. Camillo based his opinion on Plaintiff's subjective

reports rather than his own medical judgment. (T. 21.) In the opinion from March 25, 2014, Dr.

Camillo wrote that the mostly marked limitations he opined were based on "pure speculation—

history of anxiety likely to worsen with stress." (T. 256-57.) This by itself is convincing

evidence that Dr. Camillo's opinion was a representation of Plaintiff's self-reported level of

---

[3]     Plaintiff does argue that "the ALJ [] failed to acknowledge months of treatment provided
by Therapist Daily under Dr. Camillo's supervision and further failed to explain its implicit
rejection." (Dkt. No. 9, at 13 [Pl. Mem. of Law].) However, "[a]n ALJ is not required to discuss
in depth every piece of evidence contained in the record, so long [as] the evidence of record
permits the Court to glean the rationale of the ALJ's decision." *LaRock ex. rel. M.K. v. Astrue*,
No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v.
Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Plaintiff does not specify how the ALJ's failure
to discuss the therapy notes from Therapist Dailey prevents this Court from adequately
discerning the ALJ's rationale or from determining whether the ALJ's conclusions are supported
by substantial evidence. Nor does Plaintiff point to any example of greater objective limitations
from Therapist Dailey's treatment notes that would suggest the ALJ would have been required to
engage in a more detailed discussion of those treatment notes. Additionally, even if the ALJ
failed to specifically mention a statement in Therapist Dailey's notes where she recommended
that Plaintiff was not employable at that time, such omission is harmless given that the clear
reliance on Plaintiff's self-reports as the basis for that opinion would indicate it would have been
rejected for precisely the same reasons the ALJ rejected Dr. Camillo's opinion. Remand for
consideration of Therapist's Dailey's opinion would not serve any useful purpose. *See Cottrell
v. Colvin,* 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered
harmless where proper consideration of the physician's opinion would not change the outcome
of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Blabac v. Comm'r of
Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting
cases which indicate harmless error where the opinions that the ALJ failed to weigh either did
not conflict with the ALJ's findings or written consideration of the opinions would not have
changed the outcome of the ALJ's decision).

limitation rather than an indication of Dr. Camillo's own judgment regarding Plaintiff's limitations. However, there is additional evidence that further supports this interpretation. On August 15, 2013, Dr. Camillo noted, "it appears that her concern is regarding her work status. My earlier impression is that she was ready to be trained for employment. However, [her] boyfriend feels that symptoms are not well addressed and [Plaintiff] endorsed persisting panic attacks, anxiety, and depression that she thinks would be an impairment to work. So, disability will be reevaluated." (T. 282-83.) On August 29, 2013, Dr. Camillo noted that "[s]he certainly is invested on not working so I had to refill out the DSS workability form." (T. 284.) Additionally, in a treatment note from Therapist Dailey—who worked at the same clinic where Dr. Camillo treated Plaintiff—from June 23, 2013, it was noted that a disability form was filled out while discussing matters with Plaintiff during a session; Therapist Dailey concluded that Plaintiff was not employable at that time due to her reports of an increase in symptoms. (T. 268.) All of these statements, combined with the clear statement in Dr. Camillo's opinion that his answers were purely speculative, provide substantial evidence to support the ALJ's rejection of this opinion given that the ALJ properly concluded Plaintiff's subjective allegations were not credible. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (affirming the rejection of an opinion where it relied heavily on plaintiff's subjective complaints rather than objective medical evidence); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to afford less weight to a physician's opinion where it was based largely on plaintiff's subjective statements, which the ALJ had found were less than fully credible); *Ford v. Astrue*, No. 1:06-CV-1227, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010) ("It was entirely appropriate for the ALJ to differentiate between those portions of [the treating physician's] report based on objective tests and those supported only by [p]laintiff's subjective report.").

For all the above reasons, the ALJ properly weighed the opinion evidence. Remand is not warranted on this basis.

### C. Whether the RFC Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 12-19 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

Plaintiff's challenge to the RFC assessment is essentially a reiteration of her objections to the ALJ's rejection of the marked limitations opined by Dr. Camillo. (Dkt. No. 9, at 16 [Pl. Mem. of Law].) For the reasons already detailed previously, the ALJ's rejection of Dr. Camillo's opinion is supported by substantial evidence. Plaintiff's argument that the RFC assessment erroneously fails to account for the limitations from that opinion is therefore not persuasive. Remand is not warranted on this basis.

**D.     Whether the Step Five Finding is Supported By Substantial Evidence Without Supporting Testimony From a Vocational Expert**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 23-24 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert*." Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Plaintiff argues that the ALJ was required to obtain testimony from a vocational expert due to the presence of mental impairments. (Dkt. No. 9, at 16-17 [Pl. Mem. of Law].) While Plaintiff is correct that these impairments imposed non-exertional limitations, she fails to allege how these impairments significantly impacted her work-related abilities such that the ALJ would

have been required to obtain vocational expert testimony. The ALJ found Plaintiff able to

perform a full range of work at all exertional levels consisting of routine daily tasks that would

not significantly change in pace or location on a daily basis. (T. 18.) The ALJ cited to the

definition of the basic mental demands required for the performance of unskilled work from SSR

85-15, namely the abilities to understand, carry out and remember simple instructions, respond

appropriately to supervision, coworkers and usual work situations, and deal with changes in a

routine work setting. (T. 22.) The ALJ noted that he found Plaintiff limited to unskilled work

due to her low IQ and academic achievement with specific limitations for low stress work with

limited changes in tasks and workplace to account for her anxiety, but otherwise found her

capable of performing simple tasks and getting along well socially. (*Id*.) He concluded that

these mental limitations did not significantly narrow the range of work she would be able to

perform and therefore used the Medical-Vocational Guidelines as a framework for finding

Plaintiff was not disabled. (*Id*.) These limitations are consistent with an ability to perform

unskilled work and do not suggest a significant impact on the occupational base. *See*

*Woodmancy v. Colvin*, 577 F. App'x 72, 76 (2d Cir. 2014) (finding the ALJ was not required to

consult a vocational expert where the ALJ found the plaintiff remained able to perform the basic

mental demands of unskilled work). The ALJ was therefore not required to obtain testimony

from a vocational expert, but instead appropriately relied on the Medical-Vocational Guidelines.

*Zabala*, 595 F.3d at 410-11. Remand is not warranted on this basis.

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September 11, 2017
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge